**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| |
|---|
| KG DONGBU STEEL CO., LTD.,<br>DONGBU STEEL CO., LTD., and<br>DONGBU INCHEON STEEL CO., LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. |

Court No. 22-00047

**COMPLAINT**

1.     Plaintiffs KG Dongbu Steel Co., Ltd. (formerly Dongbu Steel Co., Ltd.) and Dongbu Incheon Steel Co., Ltd. (collectively, "Plaintiffs" or "Dongbu Steel") by and through its counsel hereby allege and state as follows:

**JURISDICTION**

2.     Plaintiffs bring this action pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii) to contest certain aspects of the final results of the administrative review of the countervailing duty ("CVD") order on certain corrosion-resistant steel products ("CORE") from the Republic of Korea, Case No. C-580-879, issued by the International Trade Administration of the United States Department of Commerce ("Commerce").  *Certain Corrosion-Resistant Steel Products From the Republic of Korea:  Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2019*, 87 Fed. Reg. 2759 (Dep't Commerce January 19, 2022) ("CORE 2019 Final Results") and accompanying Issues and Decision Memorandum ("CORE 2019 IDM").  The challenged review covered entries in calendar year 2019.

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) because this action is commenced pursuant to 19 U.S.C. § 1516a.

14197285–1

1

**PARTIES AND STANDING**

4.      Plaintiffs are manufacturers and exporters to the United States of CORE from

Korea, and therefore are interested parties within the meaning of sections 771(9)(A) and

516A(f)(3) of the Act, 19 U.S.C. §§ 1677(9)(A) and 1516a(f)(3).  Plaintiffs were also parties to

the administrative proceeding that led to the determination that is being challenged herein, as

Plaintiffs were selected by Commerce as mandatory respondents, responded to all of

Commerce's questionnaires during the course of the proceeding, and submitted a case brief to

Commerce.  Accordingly, Plaintiffs have standing pursuant to 28 U.S.C. § 2631(c) to commence

this action.

**TIMELINESS OF THE ACTION**

5.      On January 19, 2022, Commerce published in the Federal Register the final

results of the 2019 administrative review of the CORE CVD order.  87 Fed. Reg. at 2759.

Plaintiffs timely filed a Summons on February 16, 2022, and this Complaint is filed within thirty

days of the filing of the Summons, in accordance with 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. §

2636(c), and Rules 3(a)(2) and 6(a) of the Rules of this Court.

**STATEMENT OF FACTS**

6.      On July 25, 2016, Commerce published a CVD order on CORE from Korea with

a subsidy rate for Dongbu Steel/Dongbu Incheon of 1.19 percent.  *Certain Corrosion-Resistant*

*Steel Products From India, Italy, the Republic of Korea and the People's Republic of China:*

*Countervailing Duty Order*, 81 Fed. Reg. 48,387, 48,388 (Dep't Commerce July 25, 2016)

("CVD Order").  Dongbu Steel's subsidy rate, based on certain recurring subsidy programs used

during the calendar year 2014 period of investigation, consisted almost entirely (*i.e.*, 1.13

percent) of benefits from the 2014 restructuring of Dongbu Steel's outstanding long-term loans

and bonds by its creditors committee under its corporate workout program.  *Countervailing Duty Investigation of Certain Corrosion-Resistant Steel Products From the Republic of Korea:  Final Affirmative Countervailing Duty Determination, and Final Affirmative Critical Circumstances Determination, in Part,* 81 Fed. Reg. 35,310 (Dep't Commerce June 2, 2016) and accompanying Issues and Decision Memorandum at 7.

7.      On March 28, 2019, Commerce published the final results of its first administrative review of the CVD order on CORE from Korea with subsidy rates for Dongbu Steel/Dongbu Incheon of 7.63 percent for the 2015 portion of the period of review ("POR") and 8.47 percent for the 2016 portion of the POR.  *Certain Corrosion-Resistant Steel Products From the Republic of Korea:  Final Results and Partial Rescission of Countervailing Duty Administrative Review: 2015-2016*, 84 Fed. Reg. 11,749, 11,750 (Dep't Commerce March 28, 2019) ("CORE 2015-2016 Final Results") and accompanying Issues and Decision Memorandum ("CORE 2015-2016 IDM").  Dongbu Steel's subsidy rates, based on certain recurring subsidy programs used during the 2015 and 2016 PORs, consisted almost entirely (*i.e.*, 7.62 percent and 8.45 percent, respectively) of benefits from the restructuring of Dongbu Steel's outstanding long-term loans and bonds by its creditors committee under its corporate workout program.  CORE 2015-2016 IDM at 5.

8.      In 2015 and again in 2016, Dongbu Steel's creditors committee approved debt-to-equity swaps ("D/E Swaps") by both government-controlled and private commercial banks as part of Dongbu Steel's corporate workout program.  *See* Letter from Morris, Manning & Martin, LLP to Sec'y Commerce, "Certain Corrosion Resistant Steel Products from the Republic of Korea, Case No. C-580-879:  Dongbu's Initial Questionnaire Response," 29, 32 (Dec. 2, 2020) ("Dongbu Steel's IQR").  Despite Petitioners' objections and their claim that Dongbu Steel was

unequityworthy at the time of these transactions, Commerce found that these D/E Swaps were consistent with the usual investment practice of private investors and did not confer a benefit to Dongbu Steel.  CORE 2015-2016 IDM at 5 and 34.

9.      On March 17, 2020, Commerce published the final results of its second administrative review of the CVD order on CORE from Korea with a subsidy rate for Dongbu Steel/Dongbu Incheon of 7.16 percent.  *Certain Corrosion-Resistant Steel Products From the Republic of Korea:  Final Results of Countervailing Duty Administrative Review; 2017*, 85 Fed. Reg. 15,112, 15,113 (Dep't Commerce March 17, 2020) ("CORE 2017 Final Results") and accompanying Issues and Decision Memorandum ("CORE 2017 IDM").  Dongbu Steel's subsidy rate again consisted entirely of recurring benefits from the prior restructuring of Dongbu Steel's outstanding long-term loans and bonds by its creditors committee under its corporate workout program.  CORE 2017 IDM at 5-6.  Again, despite Petitioners' objections and claim that Dongbu Steel was unequityworthy, Commerce found that the 2015 and 2016 D/E Swaps were consistent with usual investment practice of private investors and did not confer a benefit to Dongbu Steel.  CORE 2017 IDM at 4-5 and 36-37.

10.     On June 1, 2021, Commerce published the final results of its third (2018) administrative review of the CVD order on CORE from Korea with a subsidy rate for Dongbu Steel/Dongbu Incheon of 6.83 percent.  *Certain Corrosion-Resistant Steel Products From the Republic of Korea:  Final Results and Partial Rescission of Countervailing Duty Administrative Review: 2018*, 86 Fed. Reg. 29,237, 29,238 (Dep't Commerce June 1, 2021) ("CORE 2018 Final Results") and accompanying Issues and Decision Memorandum ("CORE 2018 IDM").  Dongbu Steel's subsidy rate consisted entirely of recurring benefits from the 2018 restructuring of Dongbu Steel's outstanding long-term loans and bonds by its creditors committee under its

corporate workout program.  CORE 2018 IDM at 6.  Again, despite Petitioners' objections and claim that Dongbu Steel was unequityworthy, Commerce found that the D/E Swaps were consistent with usual investment practice of private investors and did not confer a benefit to Dongbu Steel.  CORE 2018 IDM at 5-6, 37-38.  However, citing the preliminary results in an ongoing 2018 review in *Cold-Rolled Steel from Korea* and claiming that the facts differed in that case, Commerce stated that it may re-examine the equityworthiness issue for the next (*i.e.*, 2019) administrative review of CORE if new record evidence requires such an examination.  CORE 2018 IDM at 38.

11.     On September 3, 2020, Commerce initiated an administrative review of the CVD order on CORE from Korea covering calendar year 2019, which included Dongbu Steel and Dongbu Incheon among the companies for which reviews were requested.  *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 Fed. Reg. 54,983, 54,990-91 (Dep't Commerce September 3, 2020).  This is the review at issue in this appeal.

12.     On October 6, 2020, Commerce issued its initial countervailing duty questionnaire for the 2019 administrative review (*i.e.*, the fourth review) in which it notified the Government of Korea ("GOK") that it had selected Dongbu Steel/Dongbu Incheon as one of the mandatory respondents in this review.  Letter from Kathleen Marksberry, Program Manager of AD/CVD Operations Office VIII to Jinman Ro, Embassy of the Republic of Korea, "Administrative Review of Certain Corrosion Resistant Steel Products from the Republic of Korea:  Countervailing Duty Questionnaire," (Dep't Commerce Oct. 6, 2020).  On page III-1 of Section III of the initial questionnaire, Commerce specifically instructed that:

> Absent new information warranting a program reexamination, we will not reevaluate prior determinations regarding the countervailability of programs.  This includes determinations that previously examined programs are or are not countervailable.

13.     On October 27, 2020, Dongbu Steel submitted its Affiliated Companies Response in the 2019 review to Commerce.  *See* Letter from Morris, Manning & Martin, LLP to Sec'y Commerce, "Certain Corrosion Resistant Steel Products from the Republic of Korea, Case No. C-580-879:  Dongbu's Affiliated Companies Response," (Oct. 27, 2020) ("Dongbu Steel's ACR").  Dongbu Steel reported to Commerce that it would submit questionnaire responses for Dongbu Steel and Dongbu Incheon, as well as for KG Steel, which had become the major shareholder and parent company of Dongbu Steel during the 2019 POR.  *Id.* at 1, 7. Commerce's questionnaire also included a question about any change in ownership, etc., during the AUL period (*i.e.*, 2005-2018) and whether the company wished to challenge Commerce's baseline presumption that *non-recurring* subsidies continue to benefit the recipient during the 15-year allocation period.  *Id.* at 12.  As discussed, Commerce had never found the existence of any non-recurring subsidies to Dongbu Steel and thus there was no reason to challenge the baseline presumption regarding non-recurring subsidies at that time.  Dongbu Steel thus replied that:  (1) it had not changed ownership, etc., during the AUL period, (2) it did not wish to challenge Commerce's baseline presumption, and thus (3) it understood that no response to the Change-in-Ownership Appendix was required.  *Id.*

14.     On December 2, 2020, Dongbu Steel submitted its initial questionnaire response in the 2019 review to Commerce.  *See* Dongbu Steel's IQR at 27-34.  As in prior reviews, Commerce's questionnaire asked the exact same 15 questions regarding Dongbu Steel's debt restructuring, which included questions about the restructuring of its outstanding long-term loans and bonds and the debt-to-equity swaps that occurred under its corporate workout program.  *Id.* at 20-63.  The heading to that section of the questionnaire stated specifically:  "Commerce found the restructuring of debt and loans received by KG Dongbu Steel to be countervailable

previously.  We do not intend to reevaluate the countervailability of this program." *Id.* at 20.  As

in the third (2018) administrative review, Dongbu Steel provided the same responses and

accompanying exhibits with respect to the restructuring of its long-term loans and bonds,

including the third restructuring in 2018, as well as the 2015 and 2016 D/E Swaps and the third

D/E Swap that occurred in 2018.  *Compare, e.g.*, *id.* at Exhibit B-1 to Exhibit B-6, *with* Letter

from Morris, Manning and Martin LLP to Sec'y Commerce, "Certain Corrosion Resistant Steel

Products from the Republic of Korea, Case No. C-580-879:  Dongbu's Initial Questionnaire

Response," at Exhibit B-1 to Exhibit B-6 (Feb. 10, 2020).

15.	In that same questionnaire response, Dongbu Steel also reported that the creditors

committee for its workout program had agreed in December 2018 to proceed with the business

normalization process for Dongbu Steel through a merger and acquisition ("M&A").  Dongbu

Steel's IQR at 35.  Dongbu Steel provided a detailed explanation of this process and eighteen

supporting exhibits stretching from the initial decision to proceed with an M&A transaction

through to final approval of the transaction by the Dongbu Steel general shareholders meeting,

which resulted in the change in ownership of Dongbu Steel during the 2019 POR.  Dongbu

Steel's IQR at 35-46, Exhibit B-16 to Exhibit B-34.

16.	Early in 2019, the creditors committee selected financial advisors for the M&A

transaction, and they decided to use an open bidding process as the means for executing the

M&A.  Dongbu Steel's IQR at 36.  A public notice announcing the bidding process stated that

the purpose of the M&A transaction was the acquisition by a third party of newly issued

common stock that would result in the transfer of corporate management rights.  *Id.*  Potential

investors that submitted a confidentiality agreement received private and confidential

information of Dongbu Steel to assist them in determining whether to participate in the bidding

process. *Id.* Among the potential investors that received the bidding materials, three submitted preliminary bids, including the KG Consortium. *Id.* These bids were reviewed by the financial advisors and all qualified for the final bidding process, but only the KG Consortium submitted a final bid. *Id.* at 37. Following counteroffers and negotiations between the financial advisors and the KG Consortium, the final investment amount bid by the KG Consortium was accepted. *Id.* at 39. In separate agreements, the creditors committee agreed to a fourth D/E Swap and a fourth restructuring of Dongbu Steel's outstanding long-term loans and bonds. *Id.* Finally, the creditors committee, Dongbu Steel's board of directors and its general shareholders meeting each in sequence approved the entire package. *Id.*

17.     After submission of Dongbu Steel's initial questionnaire response, Commerce requested only very limited additional information related to the M&A transaction process and the final agreements that resulted in Dongbu Steel's change-in-ownership. This information consisted of more details about one of the investors in the KG Consortium and a request for more complete translations of previously-submitted documents related to the approvals and agreements concerning the M&A, the fourth D/E Swap and the fourth debt restructuring. Letter from Morris, Manning and Martin LLP to Sec'y Commerce, "Certain Corrosion Resistant Steel Products from the Republic of Korea, Case No. C-580-879: Dongbu's First Supplemental Questionnaire Response," at 8-11 (Jan. 19, 2021); Letter from Morris, Manning and Martin LLP to Sec'y Commerce, "Certain Corrosion Resistant Steel Products from the Republic of Korea, Case No. C-580-879: Dongbu's Second Supplemental Questionnaire Response," at 1-3 (Mar. 10, 2021); Letter from Morris, Manning and Martin LLP to Sec'y Commerce, "Certain Corrosion Resistant Steel Products from the Republic of Korea, Case No. C-580-879: Dongbu's Fourth Supplemental Questionnaire Response," at 1-2 (June 23, 2021).

18.     On July 16, 2021, Commerce published the preliminary results of its fourth (2019) administrative review of the CVD order on CORE from Korea with a preliminary subsidy rate for Dongbu Steel/Dongbu Incheon of 10.52 percent.  *Certain Corrosion-Resistant Steel Products From the Republic of Korea:  Preliminary Results of Countervailing Duty Administrative Review: 2019*, 86 Fed. Reg. 37,740 (Dep't Commerce July 11, 2021) ("CORE 2019 Preliminary Results") and accompanying Preliminary Decision Memorandum ("CORE 2019 PDM").  As part of the overall subsidy rate, Commerce calculated a 5.38 percent subsidy based on the 2019 restructuring of Dongbu Steel's outstanding long-term loans and bonds by its creditors committee under its corporate workout program.  CORE 2019 PDM at 13-15.

19.     Also in the CORE 2019 Preliminary Results, Commerce reversed its consistent findings in the first, second and third reviews that the first through third (2015, 2016, 2018) D/E Swaps were not countervailable.  Instead, Commerce claimed that "{a}fter further analysis of the facts on the record of this immediate review, we have determined not to rely on the private investor prices for the first, second, and third equity infusions, because they were not 'significant' within the meaning of 19 CFR 351.507(a)(2)(ii)."  CORE 2019 PDM at 16.  Based on the exact same evidence in prior reviews, Commerce had previously found the private creditors in the D/E Swaps were significant.  *E.g.*, CORE 2018 IDM at 37-38.  Commerce did not identify any new record evidence in this review that prompted, and was the basis of, Commerce's reconsideration of its prior findings that these three D/E Swaps were not countervailable.  CORE 2019 PDM at 15-18.  Thus, for the first time in the history of this CORE CVD proceeding, Commerce determined that Dongbu Steel had received a non-recurring subsidy and allocated the benefits over the 15-year AUL period.

20.     Commerce did not address the effect of the change-in-ownership of Dongbu Steel on any non-recurring subsidies that Dongbu Steel had received.  Instead, Commerce merely stated:  "we note that KG Dongbu Steel did not request that any of the existing subsidies be extinguished due to the change in ownership."  CORE 2019 PDM at 7.  As previously noted, Dongbu Steel had made the statement cited by Commerce in its October 27, 2020 ACR when responding to a question about any change in ownership, etc., during the AUL period, and not during the POR.  Dongbu Steel's ACR at 12.  At that time, Commerce had not found that Dongbu Steel had received any non-recurring subsidies during the AUL period.  *E.g.*, CORE 2017 IDM at 36-37.  However, Dongbu Steel had provided detailed information regarding its change in ownership during the POR.  *E.g.*, Dongbu Steel's IQR at 35-46.  Until Commerce found for the first time in the CORE 2019 Preliminary Results that the 2015-2018 D/E Swaps provided non-recurring subsidies during the AUL period, there had been no basis for Dongbu Steel to raise the issue of the extinguishment of existing, non-recurring subsidies as a result of the change in ownership.

21.     Commerce also found that Dongbu Steel was uncreditworthy in the CORE 2019 Preliminary Results.  CORE 2019 PDM at 15.  Thus, Commerce stated that in accordance with 19 C.F.R. 351.505(a)(3)(iii) it calculated an uncreditworthy benchmark, including historical default rates to determine the risk premium.  *Id.*  This uncreditworthy benchmark was then used to calculate the benefit from Dongbu Steel's restructured long-term loans and bonds.  CORE 2019 PDM at 10-11; *see also* Memorandum from Dennis McClure, Int'l Trade Compliance Analyst of AD/CVD Operations Office VIII to Robert Palmer, Program Manager of AD/CVD Operations Office VIII, "Preliminary Results Calculation for KG Dongbu Steel Co., Ltd. and Dongbu Incheon Steel Co., Ltd.," 3 (Dep't Commerce July 12, 2021) (on record of Case No.

C-580-879) ("Preliminary Calculation Memo").  When applying the formula for calculating an uncreditworthy benchmark, Commerce used as the creditworthy benchmark variable in the formula provided in 19 C.F.R. 351.505(a)(3)(iii) the three-year corporate bond rate from the Bank of Korea.  Preliminary Calculation Memo at 3.  However, in completing the calculation of its uncreditworthy benchmark, Commerce based the variables for the default rates required by the formula on the 3-year term of the creditworthy benchmark instead of the actual 6-year terms of the restructured loans.  Preliminary Calculation Memo at Attachment IV, tab "UCW BM."

22.     Commerce also found that Dongbu Steel was unequityworthy in the CORE 2019 Preliminary Results.  CORE 2019 PDM at 18.  Thus, because Commerce had also found Dongbu Steel to be uncreditworthy, Commerce applied uncreditworthy discount rates to calculate the benefit from the government-provided equity infusions, using the same formula and methodology as applied for calculating the uncreditworthy benchmark.  *Id.*; Preliminary Calculation Memo at 6-7.  However, in completing the calculation of its uncreditworthy discount rates, Commerce again based the variables for the default rates required by the formula on the 3-year term of the creditworthy benchmark instead of the 15-year AUL allocation period used for measuring the benefits from the government-provided equity infusions.  Preliminary Calculation Memo at Attachment IV, tab "UCW BM."

23.     On August 26, 2021, Dongbu Steel filed its case brief addressing certain errors in the CORE 2019 Preliminary Results.  Letter from Morris, Manning & Martin, LLP to Sec'y Commerce, "Certain Corrosion Resistant Steel Products from the Republic of Korea, Case No. C-580-879:  Dongbu's Case Brief," (Aug. 26, 2021) ("Dongbu Steel's Case Brief").  Dongbu Steel argued *inter alia* that:

(1) in finding that the first through third D/E Swaps provided a benefit to Dongbu Steel, Commerce violated its own clearly-articulated standard practice of not reexamining a subsidy program previously found non-countervailable in the absence of any new information on the record, *id.* at 5-13;

(2) Commerce improperly relied on a statement in Dongbu Steel's ACR related to the AUL period and found, without any examination of record, evidence that the benefits from D/E Swaps that Commerce first found countervailable in the CORE 2019 Preliminary Results, passed through to KG Dongbu Steel despite the change in ownership, *id.* at 21-31; and

(3) Commerce ignored the explicit guidance in the *Preamble* to its regulations that the choice of the applicable default rates in the formula in 19 C.F.R. § 351.505(a)(3)(iii) should correspond to the length of the countervailable loan (or allocation period for a non-recurring subsidy), *id.* at 51-56.  Thus, Commerce improperly calculated the uncreditworthy benchmark for purposes of measuring the benefits from Dongbu Steel's restructured long-term loans and bonds.  Similarly, Commerce improperly calculated the uncreditworthy discount rate for purposes of measuring the benefits from the equity infusions from government-controlled creditors.

24.     On January 19, 2022, Commerce published the final results of the 2019 administrative review of the CVD order on CORE from Korea with a subsidy rate for Dongbu Steel/Dongbu Incheon of 10.51 percent.  *Certain Corrosion-Resistant Steel Products From the Republic of Korea:  Final Results and Partial Rescission of Countervailing Duty Administrative Review: 2019*, 87 Fed. Reg. 2759, 2760 (Dep't Commerce January 19, 2022) ("CORE 2019 Final Results") and accompanying Issues and Decision Memorandum ("CORE 2019 IDM").

Commerce rejected all of Dongbu Steel's arguments concerning the errors identified in Dongbu Steel's case brief and, with respect to these issues, the final results were unchanged from the preliminary results. *Id.* at Comment 4 to Comment 10.

## STATEMENT OF CLAIMS

25.     Commerce's *Final Results* is unsupported by substantial evidence and is otherwise not in accordance with law in the following respects:

### Count One

26.     Paragraphs 1 through 25 are incorporated by reference as if fully set forth herein.

27.     Commerce's determination that the first through third D/E Swaps provided a countervailable benefit to Dongbu Steel is unsupported by substantial evidence and otherwise not in accordance with law.

### Count Two

28.     Paragraphs 1 through 27 are incorporated by reference as if fully set forth herein.

29.     Commerce's determination that the benefits from the D/E Swaps that Commerce first found countervailable in the CORE 2019 Preliminary Results, passed through to KG Dongbu Steel despite the change in ownership that occurred during the 2019 POR, is unsupported by substantial evidence and is otherwise not in accordance with law.

### Count Three

30.     Paragraphs 1 through 29 are incorporated by reference as if fully set forth herein.

31.     Commerce's calculation of the uncreditworthy benchmark for purposes of measuring the benefits from Dongbu Steel's restructured long-term loans and bonds and Commerce's calculation of the uncreditworthy discount rate for purposes of measuring the

benefits from the equity infusions from government-controlled creditors is unsupported by substantial evidence and is otherwise not in accordance with law.

## PRAYER FOR RELIEF

32.     For the foregoing reasons, Plaintiffs respectfully request that this Court hold Commerce's *Final Results* unsupported by substantial record evidence and otherwise not in accordance with law.  Plaintiffs thus respectfully request that this Court remand the *Final Results* to Commerce to correct the errors set forth in this Complaint and provide other such relief as this Court deems appropriate.

Respectfully submitted,

**MORRIS MANNING & MARTIN LLP**
1401 Eye Street, NW, Suite 600
Washington, D.C. 20005
(202) 216-4116

/s/ Brady W. Mills
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Brady W. Mills
Mary S. Hodgins
Eugene Degnan
Edward J. Thomas III
Jordan L. Fleischer
Nicholas C. Duffey

*Counsel to Plaintiffs KG Dongbu Steel Co., Ltd., Dongbu Steel Co., Ltd. and Dongbu Incheon Steel Co., Ltd.*

Dated:  March 17, 2022

14197285–1