C-580-879<br>
Remand<br>
Slip Op 24-38, Court No. 22-00047<br>
POR:  01/01/2019 – 12/31/2019<br>
~~Business Proprietary Document~~<br>
E&C/OVIII:  TEAM<br>
PUBLIC VERSION

***KG Dongbu Steel Co., Ltd. v. United States*,**
**Court No.  22-00047, Slip Op. 24-38 (CIT April 3, 2024)**
**Certain Corrosion-Resistant Steel Products from the Republic of Korea**

**FINAL RESULTS OF REDETERMINATION**
**PURSUANT TO COURT REMAND**

**I.    SUMMARY**

The U.S. Department of Commerce (Commerce) has prepared these final results of redetermination pursuant to the second remand order of the U.S Court of International Trade (the Court) in *KG Dongbu Steel Co., Ltd. et al. v. United States*, Consol. Court No.  22-00047, Slip Op. 24-38 (April 3, 2024) (*Second Remand Order*).  These final results of redetermination concern the final results of the countervailing duty (CVD) administrative review on certain corrosion-resistant steel products (CORE) from the Republic of Korea (Korea) and Commerce's *First Remand Results*.[1]  In the *AR 2019 Final Results* and the *First Remand Results*, we determined that:  (1) Dongbu Steel's first through third debt-to-equity infusions[2] provided a countervailable benefit; (2) the benefits from the debt-to-equity infusions passed through from Dongbu Steel to KG Dongbu Steel Co., Ltd. (KG Dongbu Steel) despite a change in ownership; (3) Commerce's calculations of the uncreditworthy benchmark rates are supported by substantial

---

[1] *See Certain Corrosion-Resistant Steel Products from the Republic of Korea:  Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2019*, 87 FR 2759 (January 19, 2022) (*AR 2019 Final Results*), and accompanying Issues and Decision Memorandum (IDM); *see also Final Results of Redetermination Pursuant to Court Remand, KG Dongbu Steel Co., Ltd. v. United States*, Court No. 22-00047, Slip Op. 23-98 (CIT July 7, 2023) (*First Remand Results*).
[2] Dongbu Steel Co., Ltd.'s (Dongbu Steel) 2014-2015, 2016, and 2017-2018, debt-to-equity conversions, or infusions (Dongbu Steel's debt-to-equity infusions).  *See* Memorandum, "Preliminary Analysis Memorandum – Equity Infusions," dated July 12, 2021 (Equity Infusions Analysis Memorandum), at 8-9.

evidence; and (4) Commerce's calculations of the unequityworthy discount rate, used to determine the January 1, 2019, through December 31, 2019, period of review (POR) benefit, are supported by substantial evidence. On April 3, 2024, the Court again, as further detailed below, remanded Commerce's redetermination on each of the issues identified above.[3]

Based on the Court's opinion in the *Second Remand Order*, Commerce has, under respectful protest,[4] determined that Dongbu Steel's first through third debt-to-equity infusions did not provide a countervailable benefit, and accordingly, considers the issue of whether the benefits from Dongbu Steel's debt-to-equity infusions passed through to the new KG Dongbu Steel ownership to be moot.[5] Additionally, pursuant to the *Second Remand Order*, we have reconsidered our determination in the *First Remand Results*, and re-calculated the uncreditworthy benchmark rates to reflect Commerce's regulations. Finally, we re-calculated the uncreditworthy discount rate applied to KG Dongbu Steel's 2019 equity infusion. Consequently, we have revised the subsidy rate for KG Dongbu Steel.

## II.   REMANDED ISSUES

### 1.  **2015-2018 Debt-To-Equity Conversions**

**Background**

In the *AR 2019 Final Results*, Commerce found that the entire amounts of the 2015-2018 debt-to-equity infusions were made by Government of Korea (GOK)-owned or controlled financial institutions and that Dongbu Steel was not equityworthy at the time of these infusions. In its *First Remand Order*,[6] the Court found that Commerce's departure from its prior decisions that these debt-to-equity swaps were not countervailable was arbitrary and not in accordance

---

[3] *See Second Remand Order*.
[4] *See Viraj Grp., Ltd. v. United States*, 343 F.3d 1371, 1376 (Fed. Cir. 2003) (*Viraj*).
[5] *Id.*
[6] *See KG Dongbu Steel Co., Ltd. v. United States*, 648 F.Supp.3d 1353 (CIT 2023) (*First Remand Order*).

2

with the law, because Commerce failed to provide an adequate explanation for its decision to deviate from its prior determinations, finding that "the record evidence cited by Commerce as justification for its deviation from its past practice does not deal directly with the first through third debt-to-equity conversions and is not a sufficient explanation to justify departing from its standard practice."[7]

In the *First Remand Results*, Commerce first explained that, consistent with the decisions of the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Magnola Metallurgy*[8] and *PPG Industries*,[9] we had already determined that Dongbu Steel's debt conversions, including the first through third debt-to-equity infusions, constituted financial contributions, were specific, and we were therefore not revisiting these findings.[10] However, we explained that, consistent with section 751(a)(1)(A) of Tariff Act of 1930, as amended (the Act),[11] determining the "amount" of a subsidy fundamentally involves an analysis of benefit under section 771(5)(E) of the Act during each POR. Therefore, we re-evaluated the relevant benefit information for the 2019 POR and re-calculated the benefits conferred for the 2019 POR.[12] We further explained that we were re-evaluating the *benefit*, as is our practice,[13] conferred by Dongbu Steel's debt-to-equity restructuring based on the record of the 2019 POR. The 2019 POR included private investors independent from the creditors' committee, in a new fourth debt restructure, and as a result of our examination, we realized that our prior finding that no benefit was conferred by Dongbu Steel's first through third debt-to-equity infusions was a mistake and inconsistent with

---

[7] *See First Remand Results* at 7.
[8] *See Magnola Metallurgy, Inc. v. United States*, 508 F.3d 1349 (Fed. Cir. 2007) (*Magnola Metallurgy*).
[9] *See PPG Industries, Inc. v. United States*, 978 F. 2d 1232 (Fed. Cir. 1992) (*PPG Industries*).
[10] *See First Remand Results* at 7.
[11] *See s*ection 751(a)(1)(A) of the Act.
[12] *See First Remand Results* at 7.
[13] *Id.*

19 CFR 351.507.[14] Specifically, Commerce found that it would be inconsistent for us to find on the one hand that the GOK-controlled policy banks have significant influence over the loan portion of the debt restructuring, but on the other hand that the same banks did not have such influence over the debt-to-equity portion of the debt restructuring. Therefore, we had to re-evaluate our prior determination of the benefit under Dongbu Steel's first through third debt-to-equity infusions.[15] In addition we explained that, pursuant to 19 CFR 351.507(a), KG Dongbu Steel was unequityworthy at the time of the first, second, and third debt-to-equity conversions and thus we continued to find that the equity infusions were inconsistent with the usual investment practice of private investors. Accordingly, we found the entire amount of the equity infusions relating to Dongbu Steel's first through third debt-to-equity infusions to be the benefit.[16] We then treated these debt-to-equity infusions as non-recurring benefits and allocated the entire benefit amount across the 15-year average useful life (AUL) period to determine the amount of the benefit in each year of the AUL consistent with 19 CFR 351.507(c), and attributed the 2019 allocated benefit to KG Dongbu Steel.[17]

In the *Second Remand Order*, the Court found that Commerce's determination that Dongbu Steel's first through third debt-to-equity infusions provided a benefit, in spite of Commerce's previous findings, is arbitrary and not support by substantial evidence because Commerce failed to cite to any new information or provide a reasonable explanation in either the *AR 2019 Final Results* or the *First Remand Results* that would support its reconsideration of the benefit.[18] The Court explained that without new record evidence or a reasonable explanation,

---

[14] *Id.* at 8.
[15] *Id.* at 9.
[16] *Id.* at 11-12.
[17] *Id.* at 18.
[18] *See Second Remand Order* at 18.

4

Commerce's statement that it "made a mistake" in determining the countervailability of the first through third debt-to-equity conversions is not supported by substantial evidence because it does not satisfy the standard in *SKF USA*.[19] The Court concluded that Commerce "may not attempt to reverse the countervailability determinations in the first three administrative reviews with respect to the first, second, and third debt-to-equity conversions absent new information to address fraud or mistake of fact"[20] and "Commerce did not adequately articulate the nature of the mistake."[21] Additionally, the Court concluded that Commerce may not pass through the purportedly countervailable benefits to the "first three years without substantial new evidence to justify" the calculations, and remanded this for further consideration in accordance with the *Second Remand Order*.[22]

**Analysis**

Consistent with the *Second Remand Order*, we have reconsidered our determination that Dongbu Steel's first through third debt-to-equity infusions provided a benefit. The Court explained that "Commerce has already determined…that the first three debt-to-equity conversions of that 'program' {Dongbu Debt Restructuring} provided no benefit for KG Dongbu. There are therefore no benefits from those first three debt-to-equity conversions to be included, or re-examined, …"[23] Moreover, the Court found that "private investor participation in the first three debt-to-equity restructurings was not significant. Based on the same record evidence, Commerce determined in the prior administrative reviews that the private creditors in the debt-to-equity swaps were significant."[24] Further, the Court noted that in *Nucor 2021*,

---

[19] *Id.* at 17-18 (citing *SKF Inc. v United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) (*SKF USA*) (requiring Commerce to provide a reasonable explanation for treating similar situations differently)).
[20] *Id.* at 25.
[21] *Id.* at 20.
[22] *Id.*
[23] *Id.* at 18.
[24] *Id.* at 24.

5

Commerce defended its determination that private investor participation was significant and thus there were no countervailable benefits from Dongbu Steel's debt-to-equity restructurings.[25]

On remand, we find no other basis on the record to conclude that a benefit was conferred on Dongbu Steel's first through third debt-to-equity infusions. Consequently, we find, under respectful protest,[26] that no benefit was conferred on Dongbu Steel's first through third debt-to-equity infusions and thus, that no benefit from those equity infusions pass to KG Dongbu Steel.

While we have conducted this remand in line with the Court's opinion, we do so under respectful protest because we disagree with the Court that benefit cannot be re-evaluated during each POR. It is true that absent new information, Commerce does not normally re-evaluate the financial contribution or specificity elements of a countervailable subsidy.[27] However, with respect to benefit, the Federal Circuit has recognized that Commerce can revisit any potential benefits received during the administrative POR.[28]

### 2. Change-in-Ownership

**Background**

In the *AR 2019 Final Results* IDM, Commerce explained that it continued to find that benefits to Dongbu Steel would have passed through to KG Dongbu Steel when the ownership

---

[25] *Id*. at 22 (citing *Final Results of Redetermination Pursuant to Court Remand*, *Nucor Corporation v. United States*, 461 F.Supp.3d 1374, dated September 30, 2020 (*Final Redetermination*), at 19-22, available at https://access.trade.gov/Resources/remands/20-92.pdf; *see also Nucor Corporation v. United States*, 494 F.Supp.3d 1377, 1380 (CIT 2021) (*Nucor 2021*)).
[26] *See Viraj*, 343 F.3d at 1376.
[27] *See Magnola Metallurgy*, 508 F.3d at 1355.
[28] *See PPG Industries*, 978 F.2.d at 1237, recognizing that "the relevant inquiry is whether or not {Flotado and Plano} received any benefits during the period of review…"; *see also Steel Concrete Reinforcing Bar from the Republic of Turkey: Preliminary Results of Countervailing Duty Administrative Review and Intent To Rescind the Review in Part; 2016*, 83 FR 63472 (December 10, 2018), and accompanying Preliminary Decision Memorandum (PDM) at 16-19*, unchanged in Steel Concrete Reinforcing Bar from the Republic of Turkey: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2016*, 84 FR 36051 (July 26, 2019), and *Steel Concrete Reinforcing Bar from the Republic of Turkey: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2017*, 85 FR 42353 (July 14, 2020), and accompanying IDM at Comment 4, where Commerce revisited and revised its benefit analysis of the Investment Incentive Certificates program as a result of new information.

changed because KG Dongbu Steel was given an opportunity to rebut Commerce's presumption that benefits would pass through to the new owners but declined to respond to the Change-in-Ownership Appendix (CIO Appendix). Without a response to the questions in the CIO Appendix, we followed our standard practice and found that KG Dongbu Steel did not rebut the presumption of benefit pass through, and thus any benefit to Dongbu Steel would pass through to KG Dongbu Steel. In its *First Remand Order*, the Court ordered Commerce to reconsider whether substantial evidence supports a determination that any change in ownership occurred at arm's length and for fair market value and extinguished any alleged subsidies from Dongbu Steel's debt-to-equity infusions to KG Dongbu Steel.[29]

In the *First Remand Results*, Commerce explained that it had a baseline presumption that non-recurring subsidies can benefit the recipient over a period of time (*i.e.*, allocation period) normally corresponding to the AUL of the recipient's assets.[30] Commerce's CIO Appendix provides respondents an opportunity to provide us with the information necessary to determine whether any possible subsidies during the AUL period pass through to the new owners or were extinguished during the sale. We further explained that KG Dongbu Steel had the burden to challenge our baseline presumption, yet it chose not to do so,[31] and Commerce continued its baseline presumption that non-recurring subsidies (*i.e.*, the debt-to-equity swaps prior to the acquisition of Dongbu Steel) continue to benefit KG Dongbu Steel over the allocation period.

In its *Second Remand Order*, the Court concluded that Commerce's explanation was not reasonable and was not responsive to the *First Remand Order*.[32] The Court further agreed with

---

[29] *See First Remand Order* at 14-15.
[30] *See First Remand Results* at 12.
[31] *See Zenith Elecs. Corp. v. United States*, 988 F.2d 1573, 1583 (Fed. Cir. 1993) ("The burden of production should belong to the party in possession of the necessary information."); and *QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011) ("the burden of creating an adequate record lies with interested parties.") (internal quotation marks, alterations, and citation omitted).
[32] *See Second Remand Order* at 26.

7

KG Dongbu Steel that it had no reason to submit the CIO Appendix to challenge Commerce's baseline presumption regarding non-recurring subsidies based on unforeseeable actions that Commerce would reverse its prior finding regarding Dongbu Steel's debt-to-equity infusions.[33] Further, the Court stated that "{if} the record reflects that an arm's length transaction took place at fair market value, the baseline presumption is rebutted, regardless of the absence of a CIO Appendix."[34]

**Analysis**

As explained above, Commerce has determined, under respectful protest,[35] that Dongbu Steel's first through third debt-to-equity infusions did not confer a benefit, and thus, there is not a non-recurring benefit to be allocated to KG Dongbu Steel in the 2019 administrative review. Accordingly, for this final remand redetermination, Commerce finds that the issue of whether Dongbu Steel's debt-to-equity infusions passed to KG Dongbu Steel is moot.

3. **Uncreditworthy Benchmark Rate**

**Background**

In the *AR 2019 Final Results* IDM, Commerce explained that it continued to find that the use of three-year Korean won (KRW)-denominated AA-rate corporate bonds published by the Bank of Korea for the calculation of the uncreditworthy interest rate was appropriate for the long-term loans and bonds benefit calculation.[36] Commerce rejected the argument that we

---

[33] *Id.* at 27.
[34] *Id.*
[35] *See Viraj*, 343 F.3d at 1376; *see Final Determination* IDM at Comment 8.
[36] The formula to calculate an uncreditworthy benchmark is as follows:
$i_b = [\quad\quad\quad\quad\quad] 1/n - 1,$
where:
$n$ = the term of the loan;
$i_b$ = the benchmark interest rate for uncreditworthy companies;
$i_f$ = the long-term interest rate that would be paid by a creditworthy company;
$p_n$ = the probability of default by an uncreditworthy company within n years; and
$q_n$ = the probability of default by a creditworthy company within n years, *see* 19 CFR 351.505(a)(3)(iii).

8

should use a six-year creditworthy interest rate because Commerce determined that there was no useable six-year interest rate on the record. The only six-year rate available on the record was from the creditors committee, which we found to be GOK-owned or controlled.

In its *First Remand Order*, the Court noted that despite Commerce's assertion that there was no information on the record regarding any six-year interest rate, the Plaintiffs cited potentially contrary record evidence indicating that the "{r}epayment date of outstanding loans was extended from December 31, 2020, to December 31, 2025{.}"[37] and ordered Commerce to reconsider record evidence and further substantiate the loan term used to calculate the uncreditworthy benchmark interest rate.

In the *First Remand Results*, Commerce explained that, consistent with the *CVD Preamble*,[38] because there are no useable six-year loan term interest rates available on the record, Commerce continued to use three years for the term of the loan and bond variable and the three-year creditworthy default and uncreditworthy default rates.[39] In the *Second Remand Order*, the Court concluded that Commerce's explanation is arbitrary and that to use three years for the term of the loan variable "n" and the length of time within which creditworthy and uncreditworthy companies may default for variables "$p_n$" and "$q_n$" is "contrary to the plain language of {Commerce's} regulations."[40] Moreover, the Court held that, apart from the long-term interest rate that would be paid by a creditworthy company (variable "$i_f$"), Commerce must either revise the calculation of the uncreditworthy benchmark rate by using the six-year term and default rates

---

[37] *Id.* (citing KG Dongbu Steel's Letter, "Initial Questionnaire Response," dated December 2, 2020 (KG Dongbu Steel's IQR), at 45).
[38] *See Countervailing Duties*, 63 FR 65348, 65365 (November 25, 1998) (*CVD Preamble*).
[39] *See First Remand Results* at 17.
[40] *See Second Remand Order* at 34.

9

on the record for variables "n," "p$_n$," and "q$_n$" as set out in the plain language of Commerce's regulations, or provide cogent reasoning for adopting any other alternative calculation.[41]

**Analysis**

In light of the Court's *Second Remand Order*, we reconsidered our calculations of the uncreditworthy benchmarks used to calculate the benefit for bonds and loans provided by the Creditor Bank Committee (CBC). The Court held that, "Commerce's regulation and preamble to Commerce's regulations are clear that default rates should be tied to the term of the loan…"[42] Therefore, as explained below, pursuant to Commerce's regulations and the Court's *Second Remand Order*, for each bond or loan provided by the CBC, we have revised the uncreditworthy benchmark interest rates to coincide with the number of years of each bond or loan's duration and applied the appropriate uncreditworthy benchmark interest rate to the bonds or loans which had remaining balances during the POR.

Under 19 CFR 351.505(a)(2)(iii), in selecting a comparable commercial loan, Commerce "will normally use a loan the terms of which were established during, or immediately before, the year in which the terms of the government-provided loan were established." As noted above, the uncreditworthy interest rate formula has four variables: (1) the term of the loan in question "n"; (2) the long-term interest rate paid by a creditworthy company "$i_f$"; (3) the probability of default of a creditworthy company in "n" years; and (4) the probability of default of an uncreditworthy company in "n" years.[43]

In *AR 2019 Final Results*, Commerce determined that while there were some private commercial banks involved in the debt restructuring of KG Dongbu Steel, the restructuring of

---

[41] *Id.* at 36
[42] *Id.* at 39.
[43] *See* 19 CFR 351.505(a)(3)(iii).

10

KG Dongbu Steel's debt was not overseen by those private banks.[44] Instead, KG Dongbu Steel's debt restructuring was controlled by the CBC, which, in turn, was controlled by GOK policy banks, such as the Korean Development Bank.[45] Therefore, Commerce determined that the record of this case does not warrant any change from prior reviews. Specifically, Commerce found that the loans from private creditors on the CBC cannot be construed as "comparable commercial loans," and thus, cannot be used as a commercial benchmark under section 771(5)(E)(ii) of the Act and 19 CFR 351.505(a)(2), because the CBC is controlled by GOK-controlled policy and special purpose banks.[46] Accordingly, Commerce used a three-year AA-rated KRW interest rate, published by the Bank of Korea, as the long-term interest rate paid by a creditworthy company because it was the only long-term interest rate available on the record. No other long-term KRW interest rates were provided on the record by interested parties in this review. Therefore, because there are no useable loans available, Commerce continued to use the three-year AA-rated KRW interest rate for the variable "$i_f$."[47]

As the Court noted, the *CVD Preamble* states that using "a default rate that is directly linked to the term of the loan is a better reflection of the risk associated with the long-term lending to uncreditworthy borrowers."[48] The bond and loan template provided by KG Dongbu Steel demonstrates that it had bonds and loans provided under the CBC with terms of [

---

[44] *See Certain Corrosion-Resistant Steel Products from the Republic of Korea: Preliminary Results of Countervailing Duty Administrative Review; 2019,* 86 FR 37740 (July 16, 2021) (*AR 2019 Preliminary Results*), and accompanying PDM at 14-15 (citing *Certain Corrosion-Resistant Steel Products from the Republic of Korea: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2015–2016,* 84 FR 11749 (March 28, 2019), and accompanying IDM)); *see also Certain Corrosion-Resistant Steel Products from the Republic of Korea: Final Results of Countervailing Duty Administrative Review*; 2017, 85 FR 15112 (March 17, 2020), and accompanying IDM at "Dongbu Debt Restructuring Program," unchanged in *AR 2019 Final Results*.
[45] *See AR 2019 Preliminary Results* PDM at 14-15, unchanged in *AR 2019 Final Results* IDM.
[46] *Id.*
[47] *See* Memorandum, "Draft Remand Redetermination Calculation for KG Dongbu Steel Co., Ltd. and Dongbu Incheon Steel Co., Ltd.," dated concurrently with this Draft Remand Redetermination (Draft Remand Calculation Memorandum).
[48] *See CVD Preamble,* 63 FR at 65365.

11

] years.[49] Pursuant to 19 CFR 351.505(a)(2)(iii), we determined the term of each bond or loan, "n," by identifying the "Date of Loan Receipt" and the loan's "Date of Maturity."[50] To identify the six-year loans and bonds that were restructured in 2019, we identified the new interest rate of the restructured bond or loan (under the labels "Interest Rate Specified in the Loan Agreement" or "Coupon Rate (%)"), the year the loan appeared to be restructured as a "new" loan using the column labelled "Date of Interest Payment,"[51] and the "Date of Maturity."[52]

Accordingly, we have recalculated the uncreditworthy benchmark interest rates using the three-year AA-rated KRW interest rate for variable "$i_f$," the term of each loan "n," (*i.e.*, [

] years), and the default rates "$p_n$," and "$q_n$" for the term of each loan (*i.e.*, [

] years).[53] We then calculated the benefit for the reported CBC loans and bonds that had outstanding balances during the POR. For further details, *see* Draft Calculation Memorandum at Attachment I, tab "LT(2019)."

4. **Unequityworthy Discount Rate**

**Background**

In Comment 10 of the *AR 2019 Final Results* IDM, Commerce explained that it continued to find that the use of a discount rate for uncreditworthy companies, calculated using three-year KRW-denominated AA-rate corporate bonds published by the Bank of Korea, was appropriate for the allocation of the benefit conferred by the fourth equity infusion. In the *First Remand Order*, the Court noted that, as it remanded Commerce to reconsider whether the record

---

[49] *See* KG Dongbu Steel's IQR at Exhibit B-35.
[50] *Id.*
[51] KG Dongbu Steel did not provide the specific date these bonds and loans were restructured with new terms. *Id.*
[52] *Id.*
[53] *See* Draft Remand Calculation Memorandum at Attachment I, tab "UCW BM."

evidence establishes a loan term of six years or three years, the Court also remanded Commerce's calculation of discount rates in determining the amount of benefit in each year of the fifteen-year allocation period for the AUL of the relevant assets based on Commerce's reconsideration of the record evidence.[54]

In the *First Remand Results*, Commerce explained that the use of an uncreditworthy benchmark rate, calculated using three-year KRW-denominated AA-rate corporate bonds published by Bank of Korea, is supported by substantial evidence and is appropriate, and we continued to find that the use of the same discount rate, calculated using three-year KRW-denominated AA-rate corporate bonds published by Bank of Korea, was appropriate for the allocation of the benefit conferred by the equity infusions.

In its *Second Remand Order*, the Court held that Commerce's *First Remand Results* contradict the plain language of Commerce's regulations and that its determination is not in accordance with law. Specifically, the Court found that "Commerce's regulations specifies that Commerce will {…} allocate the benefit amount conferred by an equity infusion (a non-recurring subsidy) over the same time period as the non-recurring subsidy, in accordance with 19 CFR 351.524(d)."[55]

**Analysis**

Consistent with the Court's *Second Remand Order*, Commerce has reconsidered its calculation of the discount rate in determining the amount of the benefit in each year of the 15-year allocation period for the AUL of the relevant assets based our reconsideration of the record evidence.

---

[54] *See First Remand Order* at 18.
[55] *See Second Remand Order* at 37 (citing 19 CFR 351.507(c) "the benefit conferred by an equity infusion shall be allocated over the same time period as a non-recurring subsidy").

13

Under 19 CFR 351.507(c), the benefit conferred by an equity infusion shall be allocated over the same period as a non-recurring subsidy; 19 CFR 351.524(d) describes how Commerce should allocate a non-recurring subsidy and 19 CFR 351.351.524(d)(3) describes the selection of a discount rate when allocating a non-recurring subsidy. Specifically, 19 CFR 351.524(d)(3)(ii) contains an exception for uncreditworthy firms and states that Commerce will use as a discount rate the interest rate described in 19 CFR 351.505(a)(3)(iii), which is the formula for calculating the uncreditworthy interest rate.

Using the formula for calculating the uncreditworthy interest rate, we used 15 years, based on the AUL of this case, to calculate the default rates "$p_n$," and "$q_n$" to determine the uncreditworthy discount rate.[56] We then applied this discount rate in the allocation of KG Dongbu Steel's 4th equity infusion,[57] and accordingly revised the 2019 POR subsidy rate for this program.

## III. SUMMARY AND ANALYSIS OF COMMENTS ON DRAFT REMAND RESULTS

Commerce released the Draft Remand Results to parties for comments on June 7, 2024.[58] KG Dongbu Steel and Nucor Corporation (Nucor) filed comments on the Draft Remand Results on June14, 2023.[59] In its comments, KG Dongbu Steel agrees with Commerce's Draft Remand Results, asserting that they are in accordance with the Court's *Second Remand Order*.[60] As explained below, we continue to reach the same conclusions that we reached in the Draft Remand Results. We address each of the parties' comments and provide our analysis in turn. No other interested parties commented on the Draft Remand Results.

---

[56] *See* Draft Remand Calculation Memorandum at Attachment I, tab "UCW BM."
[57] *Id*. at tab "Equity Infusions."
[58] *See* Draft Remand Results.
[59] *See* KG Dongbu Steel's Letter, "Comments on Draft Results of Redetermination Pursuant to Second Court Remand," dated June 14, 2024 (KG Dongbu Steel's Comments); and Nucor's Letter, "Comments on Draft Remand Results," dated June 14, 2024 (Nucor's Comments).
[60] *See* KG Dongbu Steel's Comments at 2.

**Issue 1: Whether Commerce Can Reconsider Previous Determinations**

The following is a verbatim summary of arguments submitted by Nucor.  For further details, *see* Nucor's Comments at 2.

- The record in the 2019 administrative review of this countervailing duty order supports {Commerce}'s original final determination and first remand redetermination that Dongbu Steel's first three debt-to-equity conversions conferred a benefit.  Agencies including {Commerce} have the inherent authority to reconsider prior determinations because "{t}he power to reconsider is inherent in the power to decide."[61]  This inherent agency authority includes the "power to correct its own errors or otherwise appropriately to modify its judgment, decree, or order."[62]  {Commerce's} previous explanation that the presence of an actual private investor in the fourth debt-to-equity swap caused it to recognize legal error in its prior determinations was a sufficient explanation pursuant to this standard.[63]  {Commerce}'s practice is to reconsider previous determinations whenever new evidence <u>or</u> new arguments provide a basis for doing so.[64]  Nucor provided both in the fourth administrative review of this order.

**Commerce's Position:**  We agree with Nucor that Commerce has the authority to "correct its own errors or otherwise appropriately to modify its judgment, decree, or order."[65]  Further, we agree with Nucor that, in the *First Remand Results*, Commerce identified the new evidence

---

[61] *See* Nucor's Comments at 2 (citing *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F. 3d 1352, 1360-61 (Fed. Cir. 2008) (*Tokyo Kikai*)).
[62] *Id.* (citing *Tokyo Kikai* quoting *Bookman v. United States*, 453 F. 2d 1263, 1265 (Ct. Cl. 1972) ("{R}econsideration is often the sole means of correcting errors of procedure or substance.")).
[63] *Id.* (citing *First Remand Results* at 8).
[64] *Id.* (citing *Certain Softwood Lumber Products from Canada:  Final Results and Final Rescission, in Part, of the Countervailing Duty Administrative Review, 2020*, 87 FR 48455 (August 9, 2022), and accompanying IDM at 446 ("There are no new arguments or evidence on the record of this review that would lead Commerce to reconsider its finding…")).
[65] *See Tokyo Kikai*, 529 F. 3d 1360-61.

15

received for the 2019 POR and that we further explained our rationale for correcting our benefit determination with respect to Dongbu Steel's first through third debt-to-equity infusions.[66] However, as explained above, in light the Court's *Second Remand Order*, we find no other basis on the record to conclude that a benefit was conferred on Dongbu Steel's first through third debt-to-equity infusions. Thus, we find, under respectful protest,[67] that no benefit was conferred on those debt-to-equity infusions and thus, that no benefit from those equity infusions pass to KG Dongbu Steel.

**Issue 2: Change-In-Ownership**

The following is a verbatim summary of arguments submitted by Nucor. For further details, *see* Nucor's Comments at 2-3.

- If the final remand results determine that the first three debt-to-equity swaps confer a benefit, {Commerce} should also find that these benefits pass through to KG Dongbu {Steel}. First, KG Dongbu {Steel} conceded the issue during the administrative review and did not respond to the change-in-ownership appendix (CIO appendix) as required of parties wishing to challenge the Department's baseline presumption.[68] Second, the information that KG Dongbu {Steel} otherwise provided in response to {Commerce}'s questionnaires does not support an extinguishment finding.

**Commerce's Position:** As noted above, pursuant to the Court's *Second Remand Order*, and under respectful protest, Commerce finds that Dongbu Steel's first three debt-to-equity infusions provided no benefit. While we agree with Nucor that the record demonstrates KG Dongbu Steel failed to provide a CIO appendix or demonstrate that any benefits from Dongbu Steel's debt-to-

---

[66] *See First Remand Results* at 7-12.
[67] *See Viraj*, 343 F.3d at 1376.
[68] *See* Nucor's Comments at 3 (citing KG Dongbu Steels Letter, "Dongbu's Affiliated Companies Response," dated October 27, 2020).

equity infusions were extinguished with the change in ownership, because we are finding that Dongbu Steel's first three debt-to-equity infusions provided no benefit, the issue of whether Dongbu Steel's debt-to-equity infusions passed to KG Dongbu Steel is moot.

**Issue 3: Calculations of the Uncreditworthy Benchmark and Discount Rates**

The following is a verbatim summary of arguments submitted by Nucor. For further details, *see* Nucor's Comments at 3.

- {Commerce}'s calculation of both the uncreditworthy benchmark rate and the uncreditworthy discount rate in the final results and first remand redetermination were lawful, reasonable, and should not be modified. {Commerce}'s rules provide that, for uncreditworthy companies, the agency "normally will calculate {the benchmark} interest rate" according to a certain formula,[69] but the use of the word "normally" gives the agency discretion to modify certain variables to achieve accurate and consistent countervailing duty rates.[70] Especially in the context of highly technical countervailing duty rate calculation issues, {Commerce} must be given the discretion to make minor modifications with the objective of achieving accurate and consistent results. Having reasonably calculated the uncreditworthy benchmark rate, {Commerce} complied with its rules in calculating the uncreditworthy discount rate because those rules provide that the agency <u>will</u> use the uncreditworthy benchmark rate, without granting any discretion to modify it.[71]

**Commerce's Position:** We disagree with Nucor that we should reverse our calculation of the uncreditworthy benchmarks and discount rate to the calculations used in the *Final Results* and

---

[69] *See* Nucor's Comments at 3 (citing 19 CFR 351.505(a)(3)(iii)).
[70] *Id.* (citing *CVD Preamble*, 63 FR at 65365).
[71] *Id.* (citing 19 CFR 351.524(d)(3)(ii)).

17

the *First Remand Results*.  In determining the appropriate uncreditworthy benchmarks and discount rate for this remand redetermination, we relied on 19 CFR 351.505(a)(2)(iii) which states that Commerce "normally will use a loan the terms of which were established during, or immediately before, the year in which the terms of the government-provided loan were established."  As stated above, we determined the term of each bond or loan, "n," by identifying the "Date of Loan Receipt" and the loan's "Date of Maturity."[72]  To identify the six-year loans and bonds that were restructured in 2019, we identified the new interest rate of the restructured bond or loan (under the labels "Interest Rate Specified in the Loan Agreement" or "Coupon Rate (%)"), the year the loan appeared to be restructured as a "new" loan using the column labelled "Date of Interest Payment,"[73] and the "Date of Maturity."[74]

While Nucor is correct that the word "normally" in 19 CFR 351.505(a)(3)(iii) provides Commerce discretion when calculating uncreditworthy interest rate benchmarks and discount rates, in this instance, the record contains no information which requires or leads us to depart from our usual practice.  As explained in the *CVD Preamble*, "using a default rate that is directly linked to the term of the loan is a better reflection of the risk associated with long-term lending to uncreditworthy borrowers."[75]  As previously explained, the record contains only one long-term interest rate for the variable "$i_f$," but contains information for variables "$p_n$" and "$q_n$".  Thus, we have sufficient information to calculate loan term specific uncreditworthy interest rates.  Nucor cites to *Canadian Aircraft* as an example where Commerce modified the value of variable "n."[76]  However, in that case, Commerce used Canadian Moody's data in its uncreditworthy interest rate

---

[72] *See* KG Dongbu Steel's IQR at Exhibit B-35.
[73] KG Dongbu Steel did not provide the specific date these bonds and loans were restructured with new terms.  *Id.*
[74] *Id.*
[75] *See CVD Preamble*, 63 FR at 65365.
[76] *See* Nucor's Comments at 12 (citing *100 to 150 Seat Large Civil Aircraft from Canada:  Final Affirmative Countervailing Duty Determination*, 82 FR 61252 (December 27, 2017) (*Canadian Aircraft*), and accompanying IDM at Comment 16)).

18

calculation,[77] which created limitations in its application of the default uncreditworthy interest rate formula found in 19 CFR 351.505(a)(3)(iii).  However, we are not using Korean-specific default data, nor is the Moody's default data limited on this record which would require the use of a different value for the loan term variable.  In this case, there is sufficient information on the record to calculate the uncreditworthy interest rate benchmarks and discount rates consistent with normal practice.[78]

### IV. FINAL RESULTS OF REDETERMINATION

Consistent with the *Second Remand Order*, we have reconsidered our determination that Dongbu Steel's debt-to-equity infusions provided countervailable benefits, finding, under protest, that no benefits were conferred and that the issue of whether such benefits passed through to KG Dongbu Steel despite the change in ownership is moot.  Further, we have reconsidered the record evidence and revised the terms used to calculate the uncreditworthy benchmark interest rates and the unequityworthy discount rate.  Based on the forgoing explanations, we have made certain changes to the *AR 2019 Final Results*, *i.e.*, we revised the subsidy rate for KG Dongbu Steel's Debt Restructuring from 5.38 percent[79] to 3.70 percent[80] and revised KG Dongbu Steel's aggregate subsidy rate for the POR from 10.52 percent[81] to 5.89 percent.[82]

Based on our determinations in the final results of redetermination, and should the Court affirm the final results of redetermination, Commerce intends to publish a notice of amended

---

[77] *Id.*
[78] *Id.*
[79] *See AR 2019 Final Results*.
[80] *See* Draft Remand Calculation Memorandum at Attachment I, tab "Debt."
[81] *See AR 2019 Final Results*.
[82] *See* Draft Remand Calculation Memorandum at Attachment I, tab "Summary."

final results in the *Federal Register* and issue appropriate instructions to U.S. Customs and Border Protection, consistent with the discussion above.

7/3/2024

X _____

Signed by: RYAN MAJERUS

Ryan Majerus
Deputy Assistant Secretary
 for Policy and Negotiations,
 performing the non-exclusive functions and duties
 of the Assistant Secretary for Enforcement and Compliance

20