Slip Op. 25-7

## UNITED STATES COURT OF INTERNATIONAL TRADE

KG DONGBU STEEL CO., LTD.,
DONGBU STEEL CO., LTD., and
DONGBU INCHEON STEEL CO.,
LTD.,

      Plaintiffs,

v.

UNITED STATES,

      Defendant,

and

NUCOR CORPORATION and
STEEL DYNAMICS, INC.,

      Defendant-Intervenors.

Before: Jennifer Choe-Groves, Judge

Court No. 22-00047

## OPINION AND ORDER

[Sustaining the U.S. Department of Commerce's Final Results of Redetermination Pursuant to Court Remand in the countervailing duty review of certain corrosion-resistant steel products from the Republic of Korea.]

Dated: January 17, 2025

Brady W. Mills, Donald B. Cameron, Jr., Eugene Degnan, Jordan L. Fleischer, Julie C. Mendoza, Mary Shannon Hodgins, Nicholas C. Duffy, and Rudi W. Planert, Morris, Manning & Martin, LLP, of Washington, D.C., for Plaintiffs KG Dongbu Steel Co., Ltd., Dongbu Steel Co., Ltd., and Dongbu Incheon Steel Co., Ltd.

Claudia Burke, Assistant Director, Elizabeth Speck, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C.  With them on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, and Patricia M. McCarthy, Director.  Of counsel on the brief was Jack Dunkelman, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

Alan H. Price, Adam M. Teslik, Christopher B. Weld, Derick G. Holt, Enbar Toledano, Maureen E. Thorson, Paul A. Devamithran, Robert E. DeFrancesco, III, Tessa V. Capeloto, and Theodore P. Brackemyre, Wiley Rein LLP, of Washington, D.C., for Defendant-Intervenor Nucor Corporation.

Roger B. Schagrin, Alessandra A. Palazzolo, Christopher T. Cloutier, Elizabeth J. Drake, Jeffrey D. Gerrish, Luke A. Meisner, Michelle R. Avrutin, Nicholas J. Birch, Saad Y. Chalchal, and William A. Fennell, Schagrin Associates, of Washington, D.C., for Defendant-Intervenor Steel Dynamics, Inc.

Choe-Groves, Judge: Plaintiffs KG Dongbu Steel Co., Ltd. ("KG Dongbu Steel"), Dongbu Steel Co., Ltd. ("Dongbu Steel"), and Dongbu Incheon Steel Co., Ltd. (collectively, "Plaintiffs" or "KG Dongbu") filed this action challenging the U.S. Department of Commerce's ("Commerce") fourth administrative review of Certain Corrosion-Resistant Steel Products from the Republic of Korea ("Final Results"), 87 Fed. Reg. 2759 (Dep't of Commerce Jan. 19, 2022) (final results and partial rescission of countervailing duty administrative review; 2019), and the accompanying Issues and Decision Memorandum for the Final Results and Partial Rescission of the 2019 Administrative Review of the Countervailing Duty Order on Certain Corrosion-Resistant Steel Products from the Republic of Korea

("IDM"), PR 213.[1]  In <u>KG Dongbu Steel Co., Ltd. v. United States</u> ("<u>KG Dongbu</u>
<u>II</u>"), 48 CIT __, 695 F. Supp. 3d 1338 (2024), the Court remanded the case to
Commerce for a second time for reconsideration and further discussion.  <u>KG</u>
<u>Dongbu II</u>, 48 CIT at __, 695 F. Supp. 3d at 1356–57.  Now before the Court is
Commerce's Final Results of Redetermination Pursuant to Court Remand
("<u>Second Remand Redetermination</u>").  Commerce's Final Results Redetermination
Pursuant Ct. Remand, ECF Nos. 76-1, 77-1; 2PRR 5.  For the following reasons,
the Court sustains Commerce's <u>Second Remand Redetermination</u>.

## ISSUES PRESENTED

The Court reviews the following issues:

1.  Whether Commerce's determination that the first through third
    debt-to-equity restructurings did not provide a countervailable
    benefit to KG Dongbu is supported by substantial evidence and in
    accordance with law;

2.  Whether Commerce's determination that the issue whether benefits
    from the debt-to-equity restructurings passed through to KG
    Dongbu Steel despite a change in ownership is moot;

---

[1] Citations to the administrative record reflect the public record ("PR"), public
remand record ("PRR"), and second public remand record ("2PRR") numbers filed
in this case, ECF Nos. 44, 71, 87.

3. Whether Commerce's calculations of the uncreditworthy

benchmark rates are supported by substantial evidence; and

4. Whether Commerce's calculation of the unequityworthy discount

rate is supported by substantial evidence.

## BACKGROUND

The Court presumes familiarity with the facts and procedural history of this

case and recites the facts relevant to the Court's review of the Second Remand

Redetermination.  See KG Dongbu II, 48 CIT at __, 695 F. Supp. 3d at 1342–44;

KG Dongbu Steel Co., Ltd. v. United States ("KG Dongbu I"), 47 CIT __, __, 648

F. Supp. 3d 1353, 1356 (2023).

Commerce published its countervailing duty order on July 25, 2016.  Certain

Corrosion-Resistant Steel Products from India, Italy, Republic of Korea and the

People's Republic of China, 81 Fed. Reg. 48,387 (Dep't of Commerce July 25,

2016) (countervailing duty order).  Commerce initiated an administrative review of

the countervailing duty order on certain corrosion-resistant steel products from the

Republic of Korea ("Korea") for the period of January 1, 2019 to December 31,

2019 and selected KG Dongbu and Hyundai Steel Company as mandatory

respondents.  Initiation of Antidumping and Countervailing Duty Administrative

Reviews, 85 Fed. Reg. 54,983, 54,990–91 (Dep't of Commerce Sept. 3, 2020);

Final Results, 87 Fed. Reg. at 2760.

Commerce issued the preliminary results of the administrative review, in which Commerce calculated a 10.52% subsidy rate for KG Dongbu.  Certain Corrosion-Resistant Steel Products from the Republic of Korea ("Preliminary Results"), 86 Fed. Reg. 37,740 (Dep't of Commerce July 16, 2021) (preliminary results of countervailing duty administrative review; 2019); Decision Memorandum for the Preliminary Results of the Countervailing Duty Administrative Review; 2019: Certain Corrosion-Resistant Steel Products from the Republic of Korea ("PDM"), PR 173.  Commerce issued the Final Results of the administrative review, in which Commerce calculated a 10.51% subsidy rate for KG Dongbu and assigned the same rate to non-selected companies.  Final Results, 87 Fed. Reg. at 2760.

On appeal, Plaintiffs challenged: (1) Commerce's determination that the first through third debt-to-equity restructurings provided a countervailable subsidy; (2) Commerce's determination that the sale of Dongbu Steel was not arm's length for fair market value; (3) Commerce's calculation of the uncreditworthiness benchmark for purposes of measuring the benefit from KG Dongbu's restructured long term loans and bonds; and (4) Commerce's calculation of the unequityworthy discount rate for purposes of measuring the benefits from the equity infusions from government-controlled creditors.  Pls.' Mot. J. Agency R., ECF Nos. 33, 34; Pls.' Opening Br., ECF Nos. 33-2, 34-2; Reply Br. Pls.' Supp. Mot. J. Agency R., ECF

Nos. 40, 41.  Defendant United States ("Defendant") and Defendant-Intervenor

Nucor Corporation ("Defendant-Intervenor" or "Nucor") argued that the Court

should sustain the Final Results.  Def.'s Resp. Pls.' Mot. J. Agency R., ECF Nos.

35, 36; Def.-Interv.'s Resp. Mot. J. Agency R., ECF Nos. 37, 38, 39.

The Court observed that Commerce had considered the first through third

debt-to-equity restructurings in each of the first three administrative reviews of the

countervailing duty order.  KG Dongbu I, 47 CIT at __, 648 F. Supp. 3d at 1358.

In each of the three prior administrative reviews, Commerce had determined that

the debt-to-equity restructurings did not provide a countervailable benefit to KG

Dongbu because private creditors had participated in those debt-to-equity

restructurings and had agreed to swap debt for equity on the same terms as the

government creditors.  Certain Corrosion-Resistant Steel Products from the

Republic of Korea, 84 Fed. Reg. 11,749 (Dep't of Commerce Mar. 28, 2019) (final

results and partial rescission of countervailing duty administrative review; 2015–

2016) and accompanying Issues and Decision Memorandum; Certain Corrosion-

Resistant Steel Products from the Republic of Korea, 85 Fed. Reg. 15,112 (Dep't

of Commerce Mar. 17, 2020) (final results of countervailing duty administrative

review; 2017) and accompanying Issues and Decision Memorandum; Certain

Corrosion-Resistant Steel Products from the Republic of Korea, 86 Fed. Reg.

29,237 (Dep't of Commerce June 1, 2021) (final results and partial rescission of

countervailing duty administrative review; 2018) and accompanying Issues and Decision Memorandum.  Commerce did not conduct an unequityworthiness analysis in any of those first three administrative reviews.

The fourth administrative review also involved a fourth debt-to-equity restructuring.  See IDM at 15.  Commerce determined that the evidence showed that private banks had (1) participated in the three debt-to-equity restructurings at issue, (2) paid the same per share price as the government-controlled policy banks, and (3) purchased a significant percentage of the shares of debt that were converted to equity.  Countervailing Duty Administrative Review of Certain Corrosion-Resistant Steel Products from the Republic of Korea: Preliminary Analysis Memorandum—Equity Infusions ("Equity Infusions Analysis Memorandum" or "Equity Infusions Analysis Mem."), PR 176; see also PDM at 11–12.  Commerce thus determined that, pursuant to 19 C.F.R. § 351.507(a)(2)(i), the equity infusions in the fourth debt-to-equity restructuring were inconsistent with usual investment practices of private investors.  Equity Infusions Analysis Mem. at 13.

During the fourth administrative review, Commerce re-examined the first three debt-to-equity restructurings, determined that KG Dongbu was unequityworthy at their respective placements, and determined that the restructurings had in fact provided a benefit each time to KG Dongbu, as detailed in the Equity Infusions Analysis Memorandum.  Id. at 10–13.  Commerce

determined that the benefits of the first through third debt-to-equity restructurings were countervailable because Commerce previously determined that those debt restructurings satisfied the specificity requirement of countervailability.  IDM at 46–47; see 19 U.S.C. § 1677(5A).

Upon consideration of Plaintiffs' appeal, this Court concluded that Commerce had a standard practice of not reexamining the countervailability of a respondent's equity infusions absent new information and had not provided a reasonable explanation for departing from that practice, and the Court remanded the Final Results for reconsideration or further explanation.  KG Dongbu I, 47 CIT at __, 648 F. Supp. 3d at 1357–59.  This Court reasoned that all the information cited by Commerce regarding the first through third debt-to-equity restructurings was based on existing record evidence that had been thoroughly considered in the previous reviews and that no new information impacted the facts surrounding the fourth debt-to-equity restructuring.  Specifically, "the record evidence cited by Commerce as justification for its deviation from its past practice does not deal directly with the first through third debt-to-equity restructurings and is not a sufficient explanation to justify departing from its standard practice."  Id. at __, 648 F. Supp. 3d at 1359.  The fourth administrative review was based on the same record as the first through third reviews, and thus Commerce did not provide a

sufficient explanation or cite new substantial evidence to justify departing from the

prior three reviews in the fourth administrative review.

The Court remanded for Commerce to reconsider or further explain: (1) its

determination that the first through third debt-to-equity restructurings provided a

countervailable benefit; (2) its determination that the benefits from the debt-to-

equity restructurings "passed through" to Plaintiffs despite the change in

ownership; (3) whether Commerce's calculations of the uncreditworthy benchmark

rates are supported by substantial evidence; and (4) whether Commerce's

calculation of the unequityworthy discount rate is supported by substantial

evidence.  Id. at __, 648 F. Supp. 3d at 1357–61.

Commerce filed its First Remand Redetermination maintaining that all of its

original determinations were correct.  Commerce's Final Results Redetermination

Pursuant Ct. Remand ("First Remand Redetermination"), ECF Nos. 57-1, 58-1.  In

summary, Commerce reiterated on remand that Commerce was attempting to fix in

the fourth administrative review a "mistake" that it had made in the three prior

administrative reviews, but Commerce again failed to cite substantial record

evidence or provide an adequate explanation for departing from its prior

determinations that the first three debt-to-equity restructurings did not provide

countervailable benefits.  Id. at 18–25.  In addition, Commerce explained on

remand that it would assess countervailable benefits as a pass-through for the prior

three years of review (despite its prior determinations that Commerce would not

countervail benefits in the first three years of review), plus countervailable benefits

for the fourth year of review, without citing substantial record evidence or

providing an adequate explanation for this change in practice.  Id. at 25–32.

      With respect to the First Remand Redetermination, the Court held that

Commerce's determinations regarding the countervailability of the debt-to-equity

restructurings and whether the change in ownership extinguished any alleged

subsidies from the first through third debt-to-equity restructurings to KG Dongbu

were unsupported by substantial evidence.  KG Dongbu II, 48 CIT at __, 659 F.

Supp. 3d at 1345–53.  The Court found further that Commerce's calculations of the

uncreditworthiness benchmark and unequityworthy discount rate were arbitrary

and inconsistent with the plain language of the applicable regulations.  Id. at __,

659 F. Supp. 3d at 1353–56.  The Court remanded Commerce's First Remand

Redetermination for Commerce to reconsider its determination or provide

additional explanation.  Id. at __, 659 F. Supp. 3d at 1356–57.

      Commerce filed its Second Remand Redetermination under protest.  Second

Remand Redetermination at 2.  Commerce determined that no benefit was

conferred through the first through third debt-to-equity restructurings.  Id. at 5–6,

15–16.  Because no benefit was conferred through the debt-to-equity

restructurings, Commerce concluded that the issue whether benefits passed through

to KG Dongbu Steel was moot. Id. at 8, 16–17. Commerce revised its calculations

of the uncreditworthy benchmark interest rates based on a three-year AA-rated

Korean won interest rate, the actual duration of each loan, and the default rates for

each loan. Id. at 10–12, 17–19. Commerce revised its calculation of the

unequityworthy discount rate based on a 15-year average useful life. Id. at 13–14,

17–19.

Defendant-Intervenor filed Defendant-Intervenor's Comments in Opposition

to Second Remand Redetermination. Def.-Interv.'s Comments Opp'n Second

Remand Redetermination ("Def.-Interv.'s Br."), ECF Nos. 81, 82. In support of

the Second Remand Redetermination, Plaintiffs filed Plaintiffs' Comments in

Support of the Second Remand Redetermination and Defendant filed Defendant's

Response to Comments on Commerce's Second Remand Redetermination. Pls.'

Comments Supp. Second Remand Redetermination ("Pls.' Br."), ECF No. 84;

Def.'s Resp. Comments Commerce's Second Remand Redetermination ("Def.'s

Br."), ECF No. 85.

## JURISDICTION AND STANDARD OF REVIEW

The U.S. Court of International Trade has jurisdiction pursuant to 19 U.S.C.

§ 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c), which grant the Court authority to

review actions contesting the final results in an administrative review of a

countervailing duty order. The Court shall hold unlawful any determination found

to be unsupported by substantial evidence on the record or otherwise not in

accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).  The Court reviews

determinations made on remand for compliance with the Court's remand order.

Ad Hoc Shrimp Trade Action Comm. v. United States, 38 CIT 727, 730, 992 F.

Supp. 2d 1285, 1290 (2014), aff'd, 802 F.3d 1339 (Fed. Cir. 2015).

## DISCUSSION

### I.    Countervailable Subsidy Overview

A countervailable subsidy exists when a foreign government provides a

financial contribution that confers a benefit upon the recipient which is deemed to

be specific.  19 U.S.C. § 1677(5) & (5A).  For equity infusions, a benefit is

conferred if the investment decision is inconsistent with the usual investment

practice of private investors, including the practice regarding the provision of risk

capital, in the country in which the equity infusion is made.  19 U.S.C.

§ 1677(5)(E)(i); see also 19 C.F.R. § 351.507(a)(1) (defining a benefit for equity

infusions).

Commerce will consider an equity infusion as being inconsistent with usual

investment practice if the price paid by the government for newly issued shares is

greater than the price paid by private investors for the same (or similar form of)

newly issued shares.  19 C.F.R. § 351.507(a)(2)(i).  Commerce will not consider

private sector investor prices if Commerce concludes that private investor

purchases of newly issued shares are not significant.  Id. § 351.507(a)(2)(iii).  In

such cases when significant private sector participation does not exist, Commerce

will determine whether the firm funded by the government-provided equity was

equityworthy or unequityworthy at the time of the equity infusion.  Id.

§ 351.507(a)(3).  A determination that the firm was unequityworthy will constitute

a determination that the equity infusion was inconsistent with the usual investment

practice of private investors, and, therefore, that a benefit to the firm exists in the

amount of the equity infusion.  Id.; see also id. § 351.507(a)(6).

    Commerce will consider a firm to have been equityworthy if Commerce

determines that, from the perspective of a reasonable private investor examining

the firm at the time the government-provided equity infusion took place, the firm

showed an ability to generate a reasonable rate of return within a reasonable period

of time.  Id. § 351.507(a)(4)(i).  In making this determination, Commerce considers

the following factors: (A) an objective analysis of the future financial prospects of

the recipient firm, (B) current and past indicators of the recipient firm's financial

health, (C) rates of return on equity in the three years prior to the government

equity infusion, and (D) private investor equity investment into the recipient firm.

Id. § 351.507(a)(4)(i)(A)–(D).  Commerce may, in appropriate circumstances,

focus on the equityworthiness of a specific project, rather than the company as a

whole.  Id. § 305.507(a)(4)(i).

## II.    First Through Third Debt-to-Equity Restructurings

In <u>KG Dongbu II</u>, the Court held that Commerce's reversal of its prior determinations that the first through third debt-to-equity restructurings provided no counteravailable benefits was arbitrary and unsupported by record evidence.  <u>KG Dongbu II</u>, 48 CIT at __, 695 F. Supp. 3d at 1350.  The Court explained that "Commerce may not attempt to reverse the countervailability determinations on the first three administrative reviews in this case absent new information to address fraud or mistake of fact" and "may not pass through the purportedly counteravailable benefits to the first three years without substantial new evidence to justify such calculations."  <u>Id.</u>  On second remand, Commerce determined that there exists "no other basis on the record to conclude that a benefit was conferred on Dongbu Steel's first through third debt-to-equity infusions."  <u>Second Remand Redetermination</u> at 6.

Commerce conducted the remand under protest because it "disagree[s] with the Court that benefit cannot be re-evaluated during each [period of review]."  <u>Id.</u> Defendant-Intervenor raises a similar argument in opposition to the <u>Second Remand Redetermination</u> that Commerce has the inherent authority to reconsider its prior determinations, even in the absence of new information.  Def.-Interv.'s Br. at 2.  In <u>KG Dongbu II,</u> the Court acknowledged that Commerce has the authority to reconsider its prior decisions if there is no specific statutory limitation against

doing so.  KG Dongbu II, 48 CIT at __, 695 F. Supp. 3d at 1347 (citing Tokyo

Kikai Seisakusho, Ltd. v. United States, 529 F.3d 1352, 1560 (Fed. Cir. 2008)).

However, this authority is not absolute and Commerce must provide an

explanation for treating similar situations differently and for deviating from its

established practices.  Id. (citing SKF USA Inc. v. United States, 263 F.3d 1369,

1382 (Fed. Cir. 2001)).

 Commerce cites to PPG Industries, Inc. v. United States ("PPG Industries"),

978 F.2d 1232 (Fed. Cir. 1992), in support of its contention that the U.S. Court of

Appeals for the Federal Circuit "has recognized that Commerce can revisit any

potential benefits received during the administrative [period of review]."  Second

Remand Redetermination at 6.  The reason for Commerce's reliance on this case is

not clear.  PPG Industries considered, in relevant part, whether parties to a

suspension agreement received prohibited countervailable subsidies during a

period of review.  PPG Indus., 978 F.2d at 1237–39.  Commerce quotes the

language "the relevant inquiry is whether or not [Flatado and Plano] received any

benefits during the period of review . . . ."  Second Remand Redetermination at 6

n.28 (quoting PPG Indus., 978 F.2d at 1237).  Commerce ignores the beginning of

the quoted sentence that provides the qualifying text: "[b]ecause we are reviewing

compliance with the suspension agreement."  PPG Indus., 978 F.2d at 1237.  Even

if not limited to the context of suspension agreements, nothing in PPG Industries,

or any other case of which the Court is aware, stands for the broad proposition that

Commerce has unfettered authority to revise its prior determinations without

providing an adequate explanation or citing new evidence as required by SKF USA

Inc. v. United States, 263 F.3d 1369 (Fed. Cir. 2001).

     Defendant-Intervenor challenges the Second Remand Redetermination,

contending that Commerce failed to address on remand evidence on the record

submitted by Defendant-Intervenor that supports a revision of Commerce's prior

debt-to-equity determinations.  Def.-Interv.'s Br. at 3–5.  Specifically, Defendant-

Intervenor asserts that it previously raised before Commerce evidence of a Korean

Government policy to influence non-government financial institutions that actively

support debt restructuring for Korean companies.  Id. at 3–4.  During the

investigation, Defendant-Intervenor argued to Commerce that the Korean

Government established the United Asset Management Company, Ltd.

("UAMCO") "to achieve financial improvement of struggling companies through a

wide range of restructuring programs, including debt restructuring, capital

injection, asset sales, corporate reorganization, workouts and liquidation and

bankruptcy proceedings."  Def.-Interv.'s Comments Advance Prelim.

Determination Regarding Dongbu at 21, PR 163 (citing Def.-Interv.'s Comments

Dongbu's First Suppl. Questionnaire Resp. at Ex. 26 at 35, PR 110–13).

Defendant-Intervenor asserted that KG Dongbu's restructuring was connected to

UAMCO's expansion and quoted a statement by a financial institution stating that

"the [Korean Government] may from time to time encourage or request the

financial institutions in Korea, including us and our subsidiaries, to make

investments in, or to provide other forms of financial support to, certain institutions

in furtherance of the Government's policy objectives." Id. at 22 (citing Def.-

Interv.'s Comments Dongbu's First Suppl. Questionnaire Resp. at Ex. 26 at 34).

Defendant-Intervenor argued to Commerce that there was evidence that the Korean

Government directed KG Dongbu's creditors or that non-governmental banks were

not sufficiently independent of government influence. Id at 24. Defendant-

Intervenor contends that it raised this evidence before Commerce on remand.

Def.-Interv.'s Br. at 5.

Commerce "must address significant arguments and evidence which

seriously undermines its reasoning and conclusions," but is not required to address

every argument or piece of evidence offered by a party. Altx, Inc. v. United States,

25 CIT 1100, 1117–18, 167 F. Supp. 2d 1353, 1374 (2001), aff'd 370 F.3d 1108,

1116 (Fed. Cir. 2004). On second remand, Commerce explained that it "[found]

no other basis on the record to conclude that a benefit was conferred on Dongbu

Steel's first through third debt-to-equity infusions." Second Remand

Redetermination at 6, 16. This suggests that Commerce reviewed the full record

on remand to identify any evidence that might support a determination that a

benefit was conferred through the debt-to-equity infusions, as the Court instructed in KG Dongbu II.

Furthermore, the evidence cited by Defendant-Intervenor does not directly undermine Commerce's determination on second remand.  A benefit is conferred "if the investment decision is inconsistent with the usual investment practice of private investors, including the practice regarding the provision of risk capital, in the country in which the equity infusion is made[.]"  19 U.S.C. § 1677(5)(E)(i); see also 19 C.F.R. § 351.507(a)(1).  The Court observes that Defendant-Intervenor offered the cited evidence to Commerce in support of its argument "that the non-government banks on the creditor committees were entrusted and directed to participate" and that Commerce "should reconsider prior determinations that the non-government banks were 'actual private investors' for the purpose of benchmarking the debt-to-equity swap portion of the restructuring."  Def.-Interv.'s Comments Advance Prelim. Determination Regarding Dongbu at 24.  Though the evidence identified by Defendant-Intervenor might suggest a general government policy to pressure non-governmental institutions to participate in debt restructuring, the evidence does not directly support a determination that such pressure was actually exerted in KG Dongbu's debt-to-equity restructurings.

The Court presumes that Commerce considered the full record, including all evidence cited by Defendant-Intervenor, and decided to reject such evidence in

Commerce's determination. The Court does not conclude that Commerce was required in the <u>Second Remand Redetermination</u> to expressly address Defendant-Intervenor's arguments and cited evidence, and the Court will not require Commerce to do so in a third remand redetermination.

In <u>KG Dongbu II</u>, the Court remanded Commerce's countervailability determination by stating that "Commerce failed to provide a reasonable explanation and failed to cite new information or a mistake of fact regarding the first three administrative reviews that would warrant reversing Commerce's prior final determinations that the first three debt-to-equity restructurings resulted in no countervailable benefits." <u>KG Dongbu II</u>, 48 CIT at __, 695 F. Supp. 3d at 1348. This Court explained that "[t]he only reason for Commerce to re-examine the countervailability of the prior debt-to-equity restructurings is 'new information,' according to [Commerce's] own statements." <u>Id.</u> at 1347. Commerce previously stated that it had made a "mistake," and therefore the Court remanded for Commerce to provide further explanation about the new information and the mistake that it had made.

On second remand, rather than providing more detail about the alleged "mistake" and any related "new information" under its own policies, Commerce reversed course and determined that no evidence on the record supported a conclusion that a benefit was conferred by the first through third debt-to-equity

restructurings.  Second Remand Redetermination at 6, 16.  Commerce had the

choice to either explain its "mistake" or to examine the full record and change its

position.  Commerce chose the latter approach, and determined that the record

evidence did not support countervailability determinations for the first three

administrative reviews.

The Court holds that Commerce's second remand redetermination is in

accordance with law, supported by substantial evidence, and in accordance with

the remand instructions.  Accordingly, the Court sustains Commerce's

determination that no benefit was conferred in the first through third debt-to-equity

restructurings.

### III.    Pass Through Benefits

On second remand, Commerce determined that because KG Dongbu's first

through third debt-to-equity restructurings did not confer a benefit and that there

was not a recurring benefit to be allocated during the 2019 administrative review,

the issue whether the benefits passed through to KG Dongbu Steel was moot.

Second Remand Redetermination at 8, 16–17.  Plaintiffs support Commerce's

determination that the issue is moot.  Pls.' Br. at 8–9.  No party objects to the

determination of mootness.  Def.'s Br. at 6; see also Def.-Interv.'s Br.  The Court

agrees that Commerce's determination that no benefit was conferred in the first

through third debt-to-equity restructurings renders moot the issue whether a benefit

passed through to KG Dongbu Steel.  The Court sustains Commerce's

determination.

### IV.    Uncreditworthy Benchmark Rate

On second remand, Commerce reconsidered its calculations of the

uncreditworthy benchmark used to calculate the benefits for bonds and loans

provided by the Creditor Bank Committee.  Second Remand Redetermination at

10–12.  In KG Dongbu II, the Court explained that "Commerce's regulation and

preamble to Commerce's regulations are clear that the default rates should be tied

to the term of the loan or, in the case of an equity benefit, to the same period as a

non-recurring subsidy[.]"  KG Dongbu II, 48 CIT at__, 695 F. Supp. 3d at 1356

(citing 19 C.F.R. § 351.524(d)(2); 19 C.F.R. § 351.507(c)).

Commerce identified that the uncreditworthy interest rate formula has four

variables, (1) the term of the loan in question "n"; (2) the long-term interest rate

paid by a creditworthy company "$i_f$"; (3) the probability of default of a

creditworthy company in "n" years; and (4) the probability of default of an

uncreditworthy company in "n" years.  Second Remand Redetermination at 10

(citing 19 C.F.R. § 351.505(a)(3)(iii)).  In applying this formula, Commerce used

the bond and loan template provided by KG Dongbu and explained that:

> [p]ursuant to 19 [C.F.R. §] 351.505(a)(2)(iii), we determined the
> term of each bond or loan, "n," by identifying the "Date of Loan
> Receipt" and the loan's "Date of Maturity."  To identify the six-

> year loans and bonds that were restructured in 2019, we
> identified the new interest rate of the restructured bond or loan
> (under the labels "Interest Rate Specified in the Loan
> Agreement" or "Coupon Rate (%)"), the year the loan appeared
> to be restructured as a "new" loan using the column labelled
> "Date of Interest Payment," and the "Date of Maturity."

Id. at 11–12.  Commerce revised its uncreditworthy benchmark interest rate

calculations based on the duration of each bond or loan and applied the calculated

interest rates to the bonds and loans that had remaining balances during the period

of review.  Id. at 10–12.

Commerce's recalculation of the uncreditworthy benchmarks is consistent

with the Court's remand instructions.  No party objects to the calculations.  Pls.'

Br. at 9–10; Def.'s Br. at 10; see Def.-Interv.'s Br.  The Court sustains the

uncreditworthy benchmark calculations.

## V.    Unequityworthy Discount Rate

In KG Dongbu II, the Court held that 19 C.F.R. §§ 351.507(c) and

351.524(d) require that Commerce "allocate the benefit amount conferred by an

equity infusion (a non-recurring subsidy) over the same time period as the non-

recurring subsidy" when calculating an unequityworthy discount rate.  KG Dongbu

II, 48 CIT at __, 695 F. Supp. 3d at 1355.  On second remand, Commerce

recalculated the uncreditworthy discount rate using a 15-year average useful life

and the formula for calculating the uncreditworthy interest rate.  Second Remand

Redetermination at 13–14.  The recalculated rate was applied to the allocation of

KG Dongbu's fourth debt-to-equity restructuring and the subsidy rate for the 2019

period of review was revised.  Id. at 14.

Commerce's recalculation of the unequityworthy discount rate is consistent

with the Court's remand instructions.  No party objects to the calculations.  Pls.'

Br. at 9–10; Def.'s Br. at 10; see Def.-Interv.'s Br.  The Court sustains the

unequityworthy discount rate calculation.

### CONCLUSION

For the foregoing reasons, the Court sustains Commerce's Second Remand

Redetermination as supported by substantial evidence and in accordance with law.

Accordingly, it is hereby

**ORDERED** that Second Remand Redetermination is sustained.

Judgment will be entered accordingly.

     /s/ Jennifer Choe-Groves
                    Jennifer Choe-Groves, Judge

Dated:    January 17, 2025
            New York, New York